IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

December 7, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| EDMUND GEORGE ZAGORSKI, | ) | **FOR PUBLICATION** |
| | ) | |
| Appellant, | ) | **FILED:  December 7, 1998** |
| | ) | |
| V. | ) | ROBERTSON CIRCUIT |
| | ) | |
| STATE OF TENNESSEE, | ) | HON. JANE W. WHEATCRAFT, |
| | ) | JUDGE |
| Appellee. | ) | |
| | ) | No. 01SO1-9711-CC-00240 |
| | ) | |
| | ) | (Post Conviction) |

For the Appellant:

Samuel L. Felker &
Joseph F. Welborn
Nashville, Tennessee

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Michael E. Moore
Solicitor General

Amy L. Tarkington
Assistant Attorney General
Nashville, Tennessee

**O P I N I O N**

AFFIRMED                                                                    BARKER, J.

## OPINION

We granted this post-conviction appeal to determine whether there is ineffective assistance of counsel where, at the express instruction of a competent and fully informed defendant, defense counsel does not investigate or present mitigating evidence at the sentencing phase of a capital trial. For the reasons provided herein, we hold that there is not.

## BACKGROUND

The petitioner, Edmund Zagorski, was convicted in 1984 of the first degree premeditated murders of John Dale Dotson and Jimmy Porter. The evidence at trial was that petitioner lured the two men into a wooded area in Robertson County under the pretense of a drug deal. Once there, petitioner shot both men and slit their throats, taking a substantial sum of money they had brought to purchase marijuana.[1]

The sentencing phase of the trial was held immediately after the jury returned its guilty verdicts. Neither the State nor the defense offered any additional proof. The jury sentenced the petitioner to death based upon two aggravating circumstances: (1) the murders were committed by the defendant while he was engaged in committing robbery of the victims, and (2) the murders were especially heinous, atrocious, or cruel in that they involved torture or depravity of mind. Tenn. Code Ann. §39-13-203(i)(7), (5) (1982).

---

[1]For a more complete recitation of the facts, see this Court's opinion in petitioner's direct appeal. State v. Zagorski, 701 S.W.2d 808, 810-11 (Tenn. 1985), cert. denied 478 U.S. 1010, 106 S.Ct. 3309, 92 L.Ed.2d 722 (1986).

Following his unsuccessful direct appeal to this Court, the petitioner filed a post-conviction petition alleging, among other things, that he was denied his constitutional right to the effective assistance of counsel at trial. Petitioner contends that his two trial lawyers were ineffective in failing to investigate and to present mitigating evidence during the sentencing portion of his trial. We affirm the dismissal of his post-conviction petition.

The evidence introduced at the post-conviction hearing was undisputed. Although the petitioner himself did not testify, he introduced the testimony of Jeffrey Blum, a program specialist with the Davidson County Public Defender's Office, and his two former lawyers, Larry Wilks and James Walton.[2] Sheriff Ted Emery and Detective Ronnie Perry from the Robertson County Sheriff's Department testified for the State.

Before trial, petitioner made it clear to his counsel that he wanted to focus exclusively on avoiding a first degree murder conviction. He unequivocally informed counsel that if convicted, he preferred death instead of a possible sentence of life in prison. Counsel advised the petitioner about the importance of and the need to investigate and use information about his family background; however, petitioner prohibited his attorneys from having any contact with his family or delving into his past. He further instructed counsel that no mitigating evidence was to be presented at the sentencing phase of trial.

Despite petitioner's explicit instructions, counsel took certain steps to investigate his family background. Counsel initially sought funds to travel to the petitioner's home town in Michigan; however, they did not go because of his strict instructions. Mr. Wilks instead contacted the petitioner's mother by telephone. Mrs.

---

[2]Mr. Walton is now a Circuit Court judge in the Nineteenth Judicial District.

3

Zagorski spoke with a heavy Polish accent and was immature and very childlike, apparently the result of a childhood head injury. While she referred to the petitioner as "my boy" and was obviously concerned about his fate, she was of little assistance and provided no information that could be pursued for mitigation.

Counsel also obtained the services of an independent psychiatrist, Dr. Ben Bursten, who examined the petitioner and confirmed that he was both competent and ineligible for an insanity defense. Dr. Bursten's findings and proposed testimony were not helpful to the defense and counsel chose not to call him to testify at trial.

On several occasions during the trial court proceedings, counsel advised petitioner of his rights and the potential consequences of his decision to forego any investigation or use of his family background and other mitigating evidence. The petitioner was adamant in his chosen course of action and he expressed full awareness of the ramifications of the death penalty.

Counsel testified that the petitioner's instructions forced them to choose between honoring his wishes and following their own professional judgment. For guidance under those circumstances, counsel contacted the Board of Professional Responsibility (BPR). The BPR issued an informal opinion[3] advising counsel to fully inform petitioner that he had a right to pursue a defense of his choice, but that his chosen defense strategy conflicted with counsel's ethical responsibilities. If petitioner persisted, then counsel were advised that they should tell him that they would file a motion to withdraw from their representation and insure that he was competent to represent himself at all stages of the trial where the conflict was imminent.

---

[3]The opinion was later adopted by the BPR as Formal Ethics Opinion 84-F-73.

4

Counsel, however, never considered withdrawing from petitioner's case because of their professional obligation to him. They represented him during the entire trial and followed his chosen defense strategy of preventing a first degree murder conviction and foregoing mitigating evidence.

After the guilty verdicts of first degree murder, counsel again conferred with petitioner about the need to pursue mitigating evidence. He directed counsel to do nothing and say nothing at the sentencing hearing because he wanted the death penalty. Once again, counsel explained to petitioner the possible consequences of his decision. Although initially resistant, the petitioner finally allowed his lawyers to make a closing argument on his behalf at the sentencing hearing. However, counsel did not argue any mitigating factors in their closing because they believed the trial court had limited their argument in that regard.

Mr. Wilks testified that he intended to argue that the victims were drug dealers who were armed, intoxicated, and dangerous. However, he believed the only available arguments for the defense were those supported by the evidence, leaving them with little recourse since they did not present any proof at the sentencing phase. The trial court refused to instruct the jury on three requested mitigating factors: the victims' participation in criminal activity, petitioner's lack of prior violent convictions, and petitioner's youth. Essentially, counsels' argument during the sentencing phase was a plea for mercy.

Testimony at the evidentiary hearing revealed potential mitigating evidence with respect to the petitioner's family background that had been available at the time of trial.[4] The petitioner grew up impoverished in Tecumseh, Michigan where he lived in a

_____

[4]Evidence of petitioner's background was provided by Jeffrey Blum. He contacted several members of the petitioner's family before the evidentiary hearing.

tenement apartment and then later in a small house. His mother was always critical of him because she wanted a daughter. An aunt helped care for the petitioner during his childhood because his mother was impaired by a brain injury. Between the ages of eight and ten, the petitioner could not read or write and he developed a stutter. Although he suffered from poor vision, he went without eye glasses for over a year.

Petitioner's father had little or no involvement in his life. When petitioner was about fourteen years old, a man in his neighborhood took him under his wing and involved him in the Boy Scouts. Nevertheless, the petitioner began to use drugs and alcohol at an early age. His grades in school were below average and he likely did not finish high school. He had minor skirmishes with the law as a juvenile and federal drug convictions as an adult; however, he had no convictions of violent crimes prior to the commission of the murders.

Following the evidentiary hearing, the trial court held that the petitioner failed to prove that his trial lawyers were ineffective. The trial court found that counsel conducted the defense at the sentencing hearing based upon instructions from the petitioner, who was competent to aid in his own defense and to have input in the trial decisions.

The trial court's decision was affirmed by the Court of Criminal Appeals. The intermediate court determined that counsel were not ineffective for the alleged failure to investigate mitigating evidence because petitioner had not shown any resulting prejudice. As to the failure to introduce mitigating evidence, the intermediate court concluded that counsel performed effectively in carrying out petitioner's demands after informing petitioner of the circumstances and the consequences of his decision.

We affirm the judgments of the courts below and hold that when a competent and fully informed defendant instructs counsel not to investigate or present mitigating evidence at trial, counsel will not later be adjudged ineffective for following those instructions.

## EFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective counsel in this proceeding, petitioner must prove by a preponderance of the evidence[5] that the advice given or services rendered by his counsel fell below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). He must also demonstrate prejudice by showing a reasonable probability that but for counsels' error, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996).

The petitioner contends that his trial attorneys were ineffective in failing to investigate and present mitigating evidence despite his instructions to the contrary. Generally, a defense attorney's failure to investigate and prepare for a possible capital sentencing hearing is below the range of competence demanded of criminal attorneys. See California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); Goad, 938 S.W.2d at 369.[6] Although there is no requirement that counsel present mitigating evidence during the sentencing phase of trial,[7] this Court has emphasized the

---

[5]The petition was filed in 1989 and is governed by the pre-1995 Post-Conviction Procedure Act. See Tenn. Code Ann. §§40-30-101 - 124 (repealed 1995). There is no explanation in the record for the lengthy delay between the filing of the petition and the evidentiary hearing held in late 1995.

[6]Lawyers representing capital defendants have a duty to prepare for both the guilt phase and sentencing phase of a trial. Goad, 938 S.W.2d at 370-71; State v. Melson, 772 S.W.2d 417, 421 (Tenn. 1989)

[7]State v. Melson, 772 S.W.2d 417, 421 (Tenn. 1989).

7

importance of mitigating evidence in capital cases "because of the belief ... that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems may be less culpable than defendants who have no such excuse." Goad, 938 S.W.2d at 369 (quoting California v. Brown, 479 U.S. 538, 544, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987)).

In this case, petitioner's counsel recognized the importance of exploring and presenting mitigating evidence. They yielded, however, to the petitioner's demands that no evidence be offered in mitigation upon his conviction of first degree murder. The petitioner understood that he faced the death penalty, but he nevertheless instructed his attorneys to refrain from any investigation into his family background and to essentially forego any defense at the sentencing phase.

We distinguish petitioner's case from those in which counsel has been adjudged ineffective for making the decision not to investigate or present mitigating evidence. See e.g. Austin v. Bell, 126 F.3d 843, 849 (6th Cir. 1997), cert. denied ___ U.S. ___, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998); Goad, 938 S.W.2d at 370. It is undisputed that counsels' inaction in this case was solely and alone the result of petitioner's instruction not to pursue any mitigation evidence.

Under these exceptional circumstances, the critical issue is whether a lawyer should follow the lawful demands of his client when those demands may cause detriment to the client's case. This Court has adopted the Code of Professional Responsibility to assist and guide lawyers in their relationships with clients and others. See Tenn. Sup. Ct. R. 8. Generally, the client has exclusive authority to make decisions about his or her case, which are binding upon the lawyer if made within the framework of the law. Tenn. Sup. Ct. R. 8, EC 7-7. For example, in criminal cases, it

8

is the client who decides what plea to enter and whether an appeal should be taken once he or she has been fully advised by counsel.  Id.

Counsel's role in a criminal case is to assist the defendant in making a defense and to represent the defendant before the court.  State v. Franklin, 714 S.W.2d 252, 262 (Tenn. 1986).  The assistance of counsel insures, among other things, that the defendant is fully advised of his or her rights, the available defense strategies, and the consequences of pursuing one strategy over another.  According to the Code of Professional Responsibility, "a lawyer should exert the lawyer's best efforts to insure that decisions of the client are made only after the client has been informed of relevant considerations."  Tenn. Sup. Ct. R. 8, EC 7-8.[8]  Counsel may even warn the client about harsh consequences that might result from pursuing an ill-advised, but legally permissible strategy.  Id.

Ultimately, however, the right to a defense belongs to the defendant.  Franklin, 714 S.W.2d at 262.  Counsel must remember that decisions, including whether to forego a legally available objective because of non-legal factors, are for the client and not the lawyer.  Tenn. Sup. Ct. R. 8, EC 7-8.  As Justice William Brennan of the United States Supreme Court has stated:

> [t]he defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.  It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage.  And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."  Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (Brennan, J., concurring).

Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (footnote omitted).

---

[8]See also Tenn. Sup. Ct. R. 8, DR 7-101(A)(3), which states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

9

When a competent defendant knowingly and voluntarily chooses a lawful course of action or defense strategy, counsel is essentially bound by that decision. If the defendant is prejudiced in some respect by his own decision, he should not later be heard to complain about those consequences by challenging the conduct of his counsel. See State v. Dunn, 453 S.W.2d 777, 779 (Tenn. 1970); Dukes v. State, 578 S.W.2d 659, 665 (Tenn. Crim. App. 1978).

Counsel, in this case, reasonably represented the petitioner despite his chosen defense strategy. First, counsel vigorously defended the petitioner during the guilt phase of the trial. Moreover, counsel spoke to petitioner's mother and obtained the services of Dr. Bursten, a forensic psychiatrist. Mr. Wilks testified that petitioner's mother provided little information which could be pursued further. Dr. Bursten examined the petitioner and concluded that he was mentally competent and ineligible for any form of insanity defense. Dr. Bursten told counsel that if he testified, he would explain that the petitioner could be a "mean person." Counsel made a strategic decision not to present Dr. Bursten's testimony at trial.

Furthermore, counsel properly advised the petitioner of the need for mitigating evidence and the potentially devastating consequences of his decision to forego such evidence. Counsel testified that they had no difficulty communicating with the petitioner and they consulted him at every critical stage of the proceedings. Petitioner was adamant and did not waiver in his decision after counsel fully advised him of his rights and the risks involved.

Counsel had no reservations about petitioner's competency to make decisions and to understand the consequences of his chosen defense strategy. Before trial, petitioner's competency to stand trial and the feasibility of an insanity defense were evaluated at Middle Tennessee Mental Health Institute (MTMHI). The evaluators

found the petitioner competent to assist in his own defense and ineligible for an insanity defense. As stated, Dr. Bursten's separate evaluation also affirmed the petitioner's competency.

The record before us clearly shows that the petitioner made an intelligent and voluntary decision not to investigate or present mitigating evidence, and that he was competent to make that decision. Counsel fulfilled their role as advocates for the petitioner and were not ineffective in abiding by his informed decision to forego the use of mitigating evidence. Because we hold that counsels' performance did not fall below an objective standard of competence, it is unnecessary for us to address the issue of prejudice. Strickland, 466 U.S. at 697, 104 S.Ct. At 2069; Goad, 938 S.W.2d at 370.

## THE ETHICS OPINION

Finally, it is appropriate to address the ethical considerations raised in Formal Ethics Opinion 84-F-73 of the Board of Professional Responsibility. As previously mentioned, petitioner's counsel sought advice from the BPR on how to represent the petitioner given the unique circumstances in this case. The BPR recognized that petitioner's defense strategy was both moral and legal, but opined that it was nevertheless in conflict with counsels' duties as defense lawyers. The BPR recommended to counsel the following steps to address the conflict with the petitioner:

> Counsel should fully inform the accused of his legal right to conduct a defense of his choice as guaranteed by the Constitution. The accused should be fully advised by counsel that his rights and interests are in conflict with counsel's moral beliefs and ethical responsibilities. In [sic] event the accused maintains his insistence on no actions or arguments on his behalf against the death penalty being imposed then counsel should advise the accused that a motion to withdraw from those portions of the trial will be filed with the court. The consequences of this action should be fully explained to the accused. The court should be fully informed of the conflicts between counsel and the accused.

11

> Counsel should seek adjudication that the accused is competent to represent himself during ... any ... portion of the trial where the conflict is imminent. Counsel should move the court to withdraw from representation during the portion of the trial where the conflict is manifested. In the event the court fails to grant such motions, the attorney should seek an immediate review by the appellate court.

See Board of Professional Responsibility, Formal Op. 84-F-73 (1984).

Counsel followed the BPR's opinion in part by informing the petitioner of his rights and how his chosen defense strategy conflicted with his legal interests. Counsel, however, chose to continue their representation of the petitioner and never informed the trial court of their conflict.

Under the circumstances in this case, counsel had no obligation to seek to terminate their representation of the petitioner. Withdrawal of counsel is governed by Disciplinary Rule 2-110 of the Code of Professional Responsibility, and in indigent criminal cases, by Tennessee Code Annotated section 40-14-205. Our review of those provisions reveals that no grounds existed for mandatory withdrawal. The petitioner never expressed a desire to discharge his appointed counsel and there was no evidence that counsels' services were meant to cause harm to another person or that the representation would result in the violation of a Disciplinary Rule. See Tenn. Sup. Ct. R. 8, DR 2-110(B).

Moreover, even if counsel had sought to withdraw from petitioner's case, such action would have required permission from the trial court. Tenn. Code Ann. § 40-14-205 (1984); Tenn. Sup. Ct. R. 8, DR 2-110(A)(1). Tennessee Code Annotated section 40-14-205 provides that a court-appointed lawyer may withdraw from representation only upon the trial court's finding of good cause. Although the circumstances in this case may have risen to the level of good cause, we will not speculate as to whether the trial court would have granted a withdrawal in the middle of this capital trial.

12

Counsel determined that the petitioner's legal interests would be served best if they continued their representation throughout the penalty phase of the trial. We are persuaded that counsel acted both reasonably and competently in representing the petitioner instead of seeking to withdraw from his case.[9] However, we are concerned that at no time did counsel inform the trial judge on the record about the circumstances or their decision to carry out the petitioner's defense strategy.

In prospective cases, when a defendant, against his counsel's advise, refuses to permit the investigation and presentation of mitigating evidence, counsel must inform the trial court of these circumstances on the record, outside the presence of the jury. The trial court must then take the following steps to protect the defendant's interests and to preserve a complete record:

> 1. Inform the defendant of his right to present mitigating evidence and make a determination on the record whether the defendant understands this right and the importance of presenting mitigating evidence in both the guilt phase and sentencing phase of trial;
>
> 2. Inquire of both the defendant and counsel whether they have discussed the importance of mitigating evidence, the risks of foregoing the use of such evidence, and the possibility that such evidence could be used to offset aggravating circumstances; and
>
> 3. After being assured the defendant understands the importance of mitigation, inquire of the defendant whether he or she desires to forego the presentation of mitigating evidence.[10]

This procedure will insure that the accused has intelligently and voluntarily made a decision to forego mitigating evidence. Trial judges, however, shall not inquire of counsel as to the content of any known mitigating evidence. To hold otherwise

---

[9]Counsels' decision to remain on petitioner's case was in accordance with EC 7-5, which permits counsel to continue representation "even though the client has elected to pursue a course of conduct contrary to the advice of the lawyer," provided the lawyer does not assist in illegal conduct or assert a frivolous legal position. Tenn. Sup. Ct. R. 8, EC 7-5.

[10]Other jurisdictions have adopted similar procedures. See Koon v. Dugger, 619 So.2d 246, 250 (Fla. 1993); Wallace v. State, 893 P.2d 504, 512-13 (Okla. Crim. App. 1995), cert. denied 516 U.S. 888, 116 S.Ct. 232, 133 L.Ed.2d 160 (1995).

would potentially force counsel to act against the client's wishes and would risk the disclosure of privileged or confidential information.

## CONCLUSION

We recognize the professional, personal, and moral conflicts that lawyers encounter when representing a defendant who chooses to forego the use of mitigating evidence. Nevertheless, we must preserve a competent defendant's right to make the ultimate decisions in his or her case once having been fully informed of the rights and the potential consequences involved.

Accordingly, when a defendant instructs counsel not to investigate or present mitigating evidence, counsel must follow the procedure outlined in this case to insure on the record that the defendant is competent and fully aware of his rights and the possible consequences of that decision. Thereafter, counsel will not be adjudged ineffective for abiding by the defendant's lawful decision.

The judgment of the Court of Criminal Appeals is affirmed. Unless stayed by this Court or other appropriate authority, the sentence of death shall be carried out as provided by law on the 15th day of April, 1999.

_____
William M. Barker, Justice

Concur:

Anderson, C.J.,
Drowota, Birch, Holder, JJ.

14