IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

NOVEMBER 1999 SESSION

FILED

January 14, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

ROGER CLAYTON DAVIS,     *

     Appellant,     *

v.     *

STATE OF TENNESSEE,     *

     Appellee.     *

C.C.A. No. 03C01-9902-CR-00076

McMinn County

Honorable Stephen M. Bevil, Judge

(Post-Conviction)

FOR THE APPELLANT:

Julie A. Rice
P. O. Box 426
Knoxville, TN 37901-0426
(On Appeal)

Thomas E. Kimball
Assistant Public Defender
110½ East Washington Avenue
Athens, TN 37303

FOR THE APPELLEE:

Paul G. Summers
Attorney General & Reporter

Ellen H. Pollack
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Jerry N. Estes
District Attorney General

William W. Reedy
Assistant District Attorney General
130 Washington Avenue, N.E.
P. O. Box 647
Athens, TN 37371-0647
District Attorney General

OPINION FILED: _____

AFFIRMED

ALAN E. GLENN, JUDGE

## O P I N I O N

The petitioner, Roger Clayton Davis, appeals as of right from the McMinn County Criminal Court's dismissal of his petition for post-conviction relief wherein he claimed ineffective assistance of counsel in his 1988 trial, which resulted in his convictions of five counts of rape and one count of aggravated kidnapping. Based upon our review, we affirm the trial court's dismissal of the petition.

## PROCEDURAL BACKGROUND

The petitioner is presently serving consecutive sentences totaling eighty-five years in the state penitentiary as a Range I standard offender. The offenses for which he was convicted occurred in January 1987. Petitioner appealed his 1988 conviction by the McMinn County jury, and this court affirmed the conviction but remanded for resentencing. See State v. Roger Clayton Davis, No. 170, 1989 WL 112748 (Tenn. Crim. App., Knoxville, Sept. 29, 1989), perm. app. denied (Tenn. 1990).

Following his resentencing, petitioner appealed the judgment of the trial court sentencing him to one hundred forty years. That sentence was modified by this court to eighty-five years as a Range I standard offender. See State v. Davis, 825 S.W.2d 109 (Tenn. Crim. App. 1991), perm. app. denied (Tenn. 1992). Petitioner filed his first post-conviction relief petition on January 4, 1993. This court sustained the trial court's dismissal of his petition without a hearing. See Roger Clayton Davis v. State, No. 03C01-9308-CR-00265, 1993 WL 523654 (Tenn. Crim. App., Knoxville, Dec. 16, 1993), perm. app. denied (Tenn. 1994). Petitioner filed a second petition for post-conviction relief on June 20, 1994, which was dismissed by the trial court without a hearing. On appeal to this court, we held "that the petition alleges a colorable claim for relief and that the trial court improperly dismissed the petition without first appointing an attorney, allowing appropriate amendments, and then determining if an evidentiary hearing was warranted." Roger Clayton Davis v. State, No. 03C01-9409-CR-00323, 1995 WL 509422, at *1 (Tenn. Crim. App., Knoxville, Aug. 29, 1995).

2

Following a remand to the trial court of the petitioner's second petition for post-conviction relief, a hearing was held on January 5, 1999. The second petition for post-conviction relief was dismissed by order of the post-conviction court on January 22, 1999. Petitioner timely appealed to this court, and it is this appeal which we now review.

**FACTS**

The opinion of this court following the petitioner's direct appeal of his conviction set out the facts of the case:

> On a cold January evening the victim was walking along the streets of Knoxville from her place of residence at a family crisis center approximately one mile to her former apartment, when she accepted the appellant's offer to drive her to the apartment. The victim protested immediately when Appellant, whom she did not know, did not drive in the direction of her destination. He drove to a trailer at a construction site in McMinn County, where he forced her to disrobe. Then, he drove her, naked and bound, to a convenience store, where she escaped by crawling through the car window and obtaining refuge inside the store while the appellant was buying beer. En route to the trailer, at the trailer and in the convenience store parking area, the appellant physically forced the victim to perform five separate acts of fellatio.

Davis, 1989 WL 112748, at *1. On November 8, 1987, while the petitioner was being held in the Loudon County Jail prior to his trial on the kidnapping and rape charges, he escaped on his black Yamaha motorcycle and ran into a police car that was stopped to block his escape. He was taken by helicopter to Fort Sanders Regional Medical Center for evaluation and treatment. He subsequently claimed that he suffered from amnesia as a result of the accident. The Fort Sanders Regional Medical Center report stated: "The patient had an obvious fracture of the left hip and of the right wrist and of the left hand. Multiple lacerations about the left ear with some blood in the ear as well as some other lacerations. The patient was seen by Dr. Finelli, neurosurgeon, and received a thorough neurological work up."

**ANALYSIS**

Petitioner presents the following allegations to support his petition for post-conviction relief based on the claim of ineffective assistance of counsel:

1. Failure of counsel to take any remedial action based on petitioner's medical condition;

2. Failure of counsel to request a change of venue;

3. Failure of counsel to determine which of petitioner's prior convictions might be used to impeach him in order that he might make an informed decision whether to exercise his right to testify at trial;

4. Failure of counsel to call witnesses in his behalf; and

5. Failure of counsel to investigate the victim's background for the purpose of substantiating petitioner's claimed defense that the victim was a prostitute who solicited him.

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997), perm. app. denied (Tenn. 1998) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S.Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S.Ct. at 2064. The Strickland court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance

4

> was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S.Ct. at 2065. Petitioner must, therefore, establish that "the advice given or the service rendered was not within the range of competence demanded of attorneys in criminal cases[.]" Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App.), perm. app. denied (Tenn. 1991).

As for the prejudice prong of the test, the Strickland court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (holding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Finally, the Strickland court stated what it deemed a critical point:

> Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

Strickland, 466 U.S. at 696, 104 S.Ct. at 2069. Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. at 2069.

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d) (1997). "A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further

proceedings. Failure to state a factual basis for the grounds alleged shall result in immediate dismissal of the petition." Id.; see also Cone v. State, 927 S.W.2d 579, 581 (Tenn. Crim. App. 1995), perm. app. denied (Tenn. 1996) (holding petitioner's claim that issues raised in a second petition were "novel" failed as "vague and conclusory").

Finally, we note that when post-conviction proceedings have included a full evidentiary hearing, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App.), perm. app. denied (Tenn. 1990).

## A. Petitioner's Mental Condition

First, petitioner asserts that, while he was at the Tennessee State Prison in Nashville prior to his trial, he was treated for attempted suicide and severe depression; he was given multiple medications on a daily basis; and no medications were provided for him during the time he was held in the McMinn County Jail at the time of his trial. He claims to have brought this situation to the attention of counsel, but counsel failed to request a continuance or request that he be provided with his medications.

The only testimony introduced at the hearing to show that the petitioner lacked capacity to stand trial because of depression or other medical problems was the testimony of the petitioner's mother and ex-wife. Petitioner's mother testified that during the trial her son "just wasn't his self" and that "he didn't act like he hardly recognized me. . . . He just stared, and I take it it's from the concussion that he had, or the medication they had him on or something. He was not my son." The petitioner's ex-wife also testified that when she saw him prior to the trial, "he wasn't the same."

The petitioner's appointed counsel, whose legal service is the subject of this petition for post-conviction relief, testified to the following during the hearing on this matter:

6

Q [by General Reedy]. Okay. Now, memory loss or failure to recall certain events that occurred sometime in the past is one condition we can be familiar with, and I think everybody in the general population is familiar with people who make those claims, but as to what was played here by some of his family members that he was disoriented, that he was not aware of the events around him, not able to identify persons, just "out of it." Did you ever observe any of that before, during or after Mr. Davis' accident?

A. I never made that observation, General, but I did know this much: that this issue that was raised here today would come back to revisit at some future point, and so I took the precaution of filing a motion for a mental evaluation because I knew I would some day be put in the position of having to explain why there was not much of a defense to offer a jury based on this claim of amnesia. So I filed a motion for a mental evaluation which resulted in the evaluation which has been tendered I believe as Exhibit Number One.

The exhibit to which counsel referred is an outpatient psychiatric evaluation completed by Dr. William M. Regan, a staff psychiatrist at the Middle Tennessee Mental Health Institute, and Dr. Samuel N. Craddock, a licensed clinical psychologist. That report, prepared following an evaluation of the petitioner on June 17, 1988, includes the following:

Mr. Davis' professed inability to recall certain incidences appears selective. He contends he does not recall prior serious charges, the event that led to his present charge or escaping from jail. However, interspersed among these periods of forgetting, Mr. Davis is able to recall information which places him in a favorable light. . . . Based upon the above observations and Mr. Davis' comments, he is considered competent to stand trial. He does not appear to have a mental illness or to lack the capacity to assist his attorney if he so chooses. He is felt capable of following courtroom testimony and aiding in his own defense.

We conclude that the petitioner has failed to show that counsel had any credible basis for seeking a continuance or taking any other corrective action based on the petitioner's mental state.

### B. Change of Venue

Second, the petitioner alleges that counsel's failure to seek a change of venue was an error of such magnitude as to constitute ineffective assistance of counsel. The petitioner's trial counsel did attempt to determine whether an impartial jury could be obtained in McMinn County. Counsel filed a motion requesting that he be allowed to conduct individual voir dire and attached various articles that had appeared in local tabloids with respect to the pretrial publicity. The trial court held that its ruling would depend upon

7

the responses of the prospective jurors. On voir dire, the trial court inquired of the panel: "Do any of you folks know anything about these alleged crimes? Have you heard anything about it? Have you read anything in the papers about it?" The only response was the statement by one prospective juror who stated, "I've read about it in the papers." Upon further questioning by the trial court, the prospective juror stated that she could disregard the news report and base her decision "solely and alone upon the evidence" presented at trial. State v. Roger Clayton Davis, No. 170, 1989 WL 112748, at *1-2 (Tenn. Crim. App., Knoxville, Sept. 29, 1989). The trial court denied the motion for individual voir dire, and there were no further questions of the jury concerning pretrial publicity. This court held, "There is no showing that a significant possibility existed that the prospective jurors had been exposed to potentially prejudicial material, mandating individual voir dire." Id. at *2. Additionally, the record includes a document dated July 21, 1988, signed by the petitioner, which states, "The jurors seated are acceptable to me." Thus, it is apparent that both petitioner's trial counsel and the trial court were aware of and dealt appropriately with the pretrial publicity; and, at the time of the trial, the petitioner did not object to the jury. Based on this, we conclude that the petitioner has failed to show that counsel had any credible basis for seeking a change of venue and therefore this allegation is without merit.

### C. Petitioner's Prior Convictions

Third, the petitioner alleges that counsel's failure to determine which of petitioner's prior convictions might be used to impeach him amounted to ineffective assistance of counsel in that the petitioner was unable to make an informed decision concerning whether he should testify at trial. The admissibility of evidence is a preliminary question for the court. See Tenn. R. Evid. 104. Both the State and petitioner's trial counsel noted that a jury-out hearing was conducted by the trial judge concerning the admissibility of evidence of prior crimes. The petitioner's criminal record reflected convictions for receiving and concealing stolen property (1977); false imprisonment (Florida, 1980); and escape (1982). The record reflects that the 1980 Florida false imprisonment conviction arose from his abduction and sexual assault upon an eighteen-year-old woman.

8

As for the petitioner's decision not to testify, petitioner's trial counsel testified to the following:

> A. I explained to him the danger of taking the witness stand, and one of the things we had talked about was not only his prior conviction in Florida, but this claim of amnesia, and I told him that claiming amnesia would be a very dangerous step to take on the witness stand because it could result in the DA, which was you, General, who would call witnesses to testify that he was not in fact suffering from amnesia –
>
> Q. In the person of the two –
>
> A. Correct.
>
> Q. Psychiatrists who offered that report.
>
> A. That's correct. That remembering certain facts and not remember[ing] certain others would obviously create a bad impression in front of the jury. So with specific reference to this testimony on his own behalf we discussed that in detail. And not only this issue of amnesia, but also after we conducted a jury out hearing, and Judge Mashburn had ruled certain convictions inadmissible and certain convictions admissible, we made the decision not to testify, but it was one that was advised and one which we had discussed.

The court noted the following during the evidentiary hearing on the petition for post-conviction relief:

> [I]t was indicated that one of his convictions would have been let in, the receiving and concealing, the other convictions Judge Mashburn kept out, which I find it was very appropriately done, but still there would have been a conviction, and with that and the amnesia issue, as I have talked about, and then the sudden recall of facts, it would have been very damaging to Mr. Davis' credibility, and there was nothing further brought up by Mr. Davis of indicating any willingness to testify once that discussion was had.

Petitioner was granted a 404(b) hearing during the trial of his case, in accordance with the Tennessee Rules of Evidence, and therefore was able to make an appropriately informed decision concerning his right to testify. Later, as the trial progressed, he "changed his mind" and decided that he wanted to testify in his own behalf. However, he stated during the post-conviction hearing that he did not inform trial counsel that he had changed his mind and wanted to testify. We conclude that this allegation is without merit.

### D. Failure to Call Witnesses

Fourth, the petitioner alleges that counsel failed to call witnesses in his behalf,

9

specifically, counsel failed to call Joseph Corley. Corley testified at the post-conviction hearing that he and the petitioner were co-workers. The trailer at the construction site where the two men worked was the one in McMinn County where the petitioner took the victim. A sawed-off shotgun was found under a mattress in the trailer by police. Mr. Corley, an ex-husband of the petitioner's mother, could have established in his testimony that the petitioner, and any number of other individuals who worked at the construction site, regularly entered the trailer and knew of the existence of the shotgun. The petitioner alleges that this testimony would have been helpful to him. The post-conviction court found that "the testimony would have been more damaging to the defendant than helpful because the testimony would have shown that Mr. Corley as well as the defendant, and anyone else that would have been [in] the trailer, would have known that the shotgun was in the trailer. This testimony, the Court finds, would not have bolstered the claim of consensual sexual conduct." We agree with this statement. Additionally, we note that, according to the rules of professional responsibility in effect in Tennessee at the time of this trial, a lawyer could "[w]here permissible, exercise his professional judgment to waive or fail to assert a right or position of his client." Tenn. Sup. Ct. R. 8, DR 7-101(B)(1).[1]

In this case, defense counsel has been a licensed attorney since 1975, practicing both as an assistant prosecutor for a number of years and later in private practice. As for not calling the petitioner's ex-stepfather to testify, that was a tactical decision made by a clearly experienced attorney. Our supreme court has held that a reviewing court defers to counsel's trial strategy or tactical choices if they are informed and based upon adequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). We conclude that this allegation is without merit.

---

[1]Our Supreme Court has adopted the Code of Professional Responsibility to "assist and guide lawyers in their relationships with clients and others." Zagorski v. State, 983 S.W.2d 654, 658 (Tenn. 1998). Additionally, in Zagorski v. State, our Supreme Court stated:

> Generally, the client has exclusive authority to make decisions about his or her case, which are binding upon the lawyer if made within the framework of the law. . . . Counsel's role in a criminal case is to assist the defendant in making a defense and to represent the defendant before the court.

Id. (citations omitted).

## E.  Failure to Adequately Investigate and to Present Defense

Fifth, the petitioner alleges that counsel failed to adequately investigate the victim's background in order to present evidence at trial that would support the petitioner's claim of consensual, paid-for sexual conduct.  Specifically, the petitioner alleges that counsel should have determined if the victim had a record of prostitution; should have called an unnamed Knoxville law enforcement officer to testify that Magnolia Avenue, the street where the petitioner encountered the victim, was a known area for prostitution; and should have verified the victim's claim that she was living at a shelter.

The record shows that, while the petitioner testified as to the facts of the incident in detail at the post-conviction hearing,[2] prior to the trial on his charges, he had provided counsel with only a "general denial" with some indication that the victim was a prostitute. Counsel's handwritten notes from an interview with the petitioner on September 9, 1987—prior to his escape from jail, motorcycle accident, and claim of amnesia—were admitted into evidence at the post-conviction hearing. According to those notes, the petitioner stated that the victim told him she would like to ride naked and asked him to tie her up and said that she had done this with her boyfriend before.

The petitioner does not recognize the difficult position that his trial counsel was in at the time of trial.  Although prior to the trial, he had told counsel in general terms of his version of the events, he was claiming, by trial time, that he was "unsure" of "what actually happened."  Thus, although the petitioner now claims that his defense was that the victim solicited him, he does not advance a theory as to how this defense could have been more

---

[2]Petitioner testified at the post-conviction hearing that he and the victim got in a fight at the trailer when the victim tried "to roll" him and announced she was not going to leave and would cry rape.  He put the naked victim and her clothes in his car and drove to the convenience store to get them both a beer to "calm down."  While he was in the store, the victim came "storming in the place saying that I tried to rape her." The following is an exchange with the prosecutor:

> Q.    She came running into the place where you were trying to buy her a beer that she said she wanted, and she was naked and she was screaming that you had raped her.
>
> A.    Yeah.
>
> Q.    And what happened next?
>
> A.    I turned around and walked out.

11

effectively presented, since he elected not to testify, both because of claimed amnesia, as well as one of his prior convictions being used for impeachment purposes. Trial counsel was faced with a positive identification of the petitioner and a victim who refused to talk with him. Counsel did go to Knoxville to try to find a record on the victim of any prior convictions for offenses of prostitution. He found none. The post-conviction court stated:

> [I]t appears to the Court, based on what I've heard, that he did the best job with what he had. He did attempt to investigate, he talked to the witnesses there at the convenience store, he went to Knoxville and tried to look up the record of this alleged victim to see whether or not she did have a record of prostitution and tried to do these things. . . . As everyone knows a person is not entitled by the constitution or the law of the land to a perfect trial and not entitled to a lawyer that can work magic, but a lawyer that can do the best job he can with the facts and the law, and he's entitled to a fair trial and entitled to have every issue raised that can possibly, legally and ethically be raised in his behalf.

We agree with the post-conviction court in this regard and conclude that this allegation is without merit.

## CONCLUSION

In all his challenges to the effectiveness of his counsel, the petitioner has failed to meet his burden of demonstrating that counsel's performance was not within the range of competence demanded of attorneys in criminal cases. It is, therefore, unnecessary for us to consider any possible prejudice to the petitioner. For these reasons, we hold that the petitioner's ineffective assistance of counsel claim is without merit. We affirm the

12

dismissal by the trial court of the petition for post-conviction relief.


_____
ALAN E. GLENN, JUDGE


CONCUR:


_____
DAVID G. HAYES, JUDGE


_____
JOE H. WALKER, III, SPECIAL JUDGE