IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2004

## STEVEN GRIFFIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 93-C-1154     Steve Dozier, Judge**

---

### No. M2003-00557-CCA-R3-PC - Filed July 13, 2004

---

The petitioner, Steven Griffin, appeals the trial court's denial of his request for forensic DNA analysis, pursuant to the Post-Conviction DNA Analysis Act of 2001. Our review discloses that the trial court ruled correctly, and we affirm the denial of the petitioner's request.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined. JOSEPH M. TIPTON, J., filed a dissenting opinion.

Steven Griffin, Appellant, *Pro Se.*

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

While serving his eighty-five-year sentence for aggravated kidnapping and six counts of aggravated rape, the petitioner filed a written request with the Davidson County Criminal Court in late December of 2002, asking that all human biological evidence in the state's possession or control and related to his convictions be submitted for DNA analysis. As grounds, the petitioner claimed that no comparison of the victim's and his DNA had ever been performed and that a "probability does exist that the petitioner would not have been prosecuted and/or convicted if exculpatory results had been obtained through DNA analysis." Previously, the petitioner had unsuccessfully attacked his convictions on direct appeal, through the post-conviction process, and through federal habeas corpus avenues. *See Steven Craig Griffin v. State*, No. 01C01-9801-CR-00004 (Tenn. Crim. App., Nashville, May 6, 1999), *perm. app. denied* (Tenn. 1999) (post-conviction); *State v. Steven Craig Griffin*, No. 01C01-9404-CR-00144 (Tenn. Crim. App., Nashville, Jun. 28, 1995), *perm. app. denied* (Tenn. 1995) (direct appeal).

The state filed a motion to dismiss and raised two issues. First, it asserted that no DNA evidence existed that would be capable of being tested. Second, it maintained that, in connection with the petitioner's appeal from the denial of his post-conviction petition, the trial court's determination that DNA evidence was irrelevant to the consensual sex defense was affirmed, thereby undermining any claim that the petitioner would not have been prosecuted or convicted.

The Davidson County trial court to which the petitioner's current motion was assigned treated the application as a petition to reopen the earlier post-conviction proceedings and denied same on February 13, 2003, with the following explanation:

> As to the petitioner's first claim raised in his initial post-conviction proceeding, the trial court found that questions regarding DNA were irrelevant because the petitioner's theory was consensual intercourse with the victim. Secondly, the petitioner demanded a speedy trial within 180 days under the Interstate Compact on Detainers Act . . . thereby not providing sufficient time for DNA testing. The Court is of the opinion that the defendant opted out of DNA testing. . . .
>
> The petitioner's current petition to re-open post-conviction proceedings requests that any physical evidence in existence be subjected to a DNA analysis. The petitioner was afforded a serology analysis and those results were made known prior to the trial in this matter. The Court reviewed the audio tapes of the petitioner's original trial in this matter. Indeed, the petitioner's defense maintained that the victim consented to intercourse. Based on this defense, the petitioner's prior post-conviction petition raising this issue and the Court of Criminal Appeals ruling, the Court is of the opinion that [t]he petitioner's petition to re-open post-conviction should be respectfully denied.

The court made no findings relative to the existence of any evidence containing DNA that could be analyzed.

On appeal, the petitioner appears *pro se*. He maintains that the trial court should not have summarily dismissed his petition for DNA analysis without appointing counsel to represent him, without affording an opportunity for the petition to be amended, and without an evidentiary hearing. The petitioner also airs other complaints in the nature of counsel's ineffective assistance and restrictions on cross-examination of the state's expert serologist at trial; we decline to address these latter complaints, as they clearly fall outside the ambit of the Post-Conviction DNA Analysis Act of 2001. *See Ricky Flamingo Brown, Sr. v. State*, No. M2002-02427-CCA-R3-PC (Tenn. Crim. App., Nashville, June 13, 2003) (Act does not permit petitioner to appeal unrelated claims or reargue

the issues raised in his previous, unsuccessful petition for post-conviction relief), *perm. app. denied* (Tenn. 2003).

The Post-Conviction DNA Analysis Act of 2001 provides in relevant part that a person convicted of aggravated rape

> may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303 (2003). There is no statute of limitations barring the filing of a petition seeking forensic DNA analysis, *see Willie Tom Ensley v. State*, No. M2002-01609-CCA-R3-PC (Tenn. Crim. App., Nashville, Apr. 11, 2003), but the Act incorporates specific qualifying criteria that must be satisfied before a court orders DNA analysis. Relevant to this case,[1] those conditions are:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

*Id*. § 40-30-304 (2003).

---

[1] The Act incorporates two separate sets of qualifying criteria. Code section 40-30-304 addresses a situation involving a "reasonable probability . . . that the petitioner *would not have been prosecuted or convicted*." Tenn. Code Ann. § 40-30-304 (2003) (emphasis added). Code section 40-30-305 is written to include the existence of a "reasonable probability . . . that analysis of the evidence will produce DNA results *which would have rendered the petitioner's verdict or sentence more favorable*." *Id*. § 40-30-305 (2003) (emphasis added). In the instant petition, the petitioner alleged a Code section 40-30-304 basis for relief that he would not have been prosecuted and/or convicted had DNA analysis been performed.

The propriety of summarily dismissing a petition requesting analysis and the construction of the Act was examined at length in *William D. Buford v. State*, No. M2002-02180-CCA-R3-PC (Tenn. Crim. App., Nashville, Apr. 24, 2003). From *Buford*, we distill that the Post-Conviction DNA Analysis Act of 2001 contemplates the summary dismissal of a petition requesting analysis "under appropriate circumstances." *William D. Buford*, slip op. at 6. The *Buford* court explained,

> [I]f the contents of a petition establish a *prima facie* case and, after any response by the state, the trial court determines all statutory prerequisites are present, a petitioner convicted of one of the statutorily enumerated crimes is entitled to DNA analysis. *See* Tenn. Code Ann. § 40-30-[3]04. If the state contests the presence of any qualifying criteria and it is apparent that each prerequisite cannot be established, the trial court has the authority to dismiss the petition. Considerable latitude must be given to trial courts in gathering the necessary information for the decision. *See* Tenn. Code Ann. § 40-30-[3]11 ("The court may in its discretion make such other orders as may be appropriate.").

*William D. Buford*, slip op. at 7.

As we view the matter in the case before us, there are four issues to be addressed. The first issue relates to the trial court's treatment of the request for DNA analysis as a petition to reopen the earlier post-conviction proceeding. The second issue involves the adequacy of the state's response that "[n]o DNA evidence exists which could be subject to testing or analysis at this time." The third issue is whether, as a matter of law, the "consensual sex defense" that the petitioner pursued at trial defeats the need for testing. The last issue is whether, to secure relief pursuant to the Act, the petitioner must demonstrate that he did not waive DNA testing in earlier proceedings.

As for the first issue, we conclude that the court should not have treated the petitioner's request as a petition to reopen his earlier post-conviction proceedings. The procedure for applying to reopen an earlier post-conviction petition is set forth in considerable detail in Code section 40-30-117. A court order for DNA analysis, granted pursuant to the Post-Conviction DNA Analysis Act of 2001, however, does not automatically supply adequate grounds to support the reopening of an earlier petition. Before an earlier petition can be reopened, a petitioner must show, *inter alia*, that "new scientific evidence establish[es] that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted" or that "the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentenced reduced." Tenn. Code Ann. § 40-30-117(a)(2), (4) (2003). To be sure, if DNA analysis, ordered pursuant to the Act, ultimately yielded scientific results exculpatory to the petitioner, then adequate grounds may well exist to reopen the earlier petition. Nonetheless, the two procedures are distinct and should not be confused. *See Ray v. State*, 984 S.W.2d 236, 238 (Tenn. Crim. App. 1997) (section 40-30-117(a)(2) does not provide petitioner a

vehicle for obtaining discovery; rather, petitioner must delineate in the motion to reopen the new scientific evidence that has already been secured). As *Buford* explains, the task of the court reviewing a request for DNA analysis is to (1) examine the contents of the petition, (2) determine if the petition alleges a *prima facie* case for relief, (3) consider any response that the state may offer, and (4) determine if the statutory criteria are present. *See William D. Buford*, slip op. at 7.

We turn next to the state's response to the trial court that "[n]o DNA evidence exists which could be subject to testing or analysis at this time." On appeal, the state qualifies that assertion and candidly points out in its appellate brief,

> The 'State's Motion to Dismiss Petitioner's Request for Forensic DNA Analysis' asserted that '[n]o DNA evidence exists which could be subject to testing or analysis at this time.' (TR, 7) If in fact no evidence were in existence, a second condition of the statute would fail, further negating any duty by the court to take action. However, the record indicates that "[b]lood, saliva, and oral and vaginal swabbings were obtained from the victim. A serologist testified that the presence of sperm was detected in both the vaginal and oral swabs. Blood, saliva and hair belonging to both defendant and the victim's husband were analyzed." *State v.* [*Steven Craig*] *Griffin*[, No. 01C01-9404-CR-00144 on direct appeal] at \*7. The State's motion offered no explanation regarding evidence which might have existed previously or regarding efforts to locate evidence still existing. The lower court made no findings regarding the existence or condition of evidence which might be subjected to DNA analysis.

*Buford* spoke of the "[c]onsiderable latitude" that must be given to trial courts "in gathering the necessary information" to determine if the petitioner is entitled to DNA analysis. The court in *Buford* then emphasized, "Because the trial court here made a conscientious effort to determine the existence of the statutory conditions *and had substantial facts upon which to determine that the biological specimens were no longer available*, a summary dismissal was appropriate." *William D. Buford*, slip op. at 7 (emphasis added). Among the substantial facts was the prosecution's affidavit stating, based upon "the records of the law enforcement agencies, the prosecution, and the trial court clerk" that no specimen existed. *Id*., slip op. at 6.

In this case, the court had no facts, substantial or otherwise, upon which a determination could rest that biological specimens were no longer available. All the court had before it was a conflict in the pleadings about the existence of DNA evidence. Because the state was seeking a summary dismissal of the petition, we regard the state's obligation in responding to the petition as requiring more than a blanket, unsworn assertion that no such evidence exists. If the state is remiss in providing an explanation or if its explanation is not sufficiently detailed, the trial court has an obligation to make reasonable factual inquiries before dismissing the petition. We do not

suggest that trial courts must or should conduct lengthy or protracted evidentiary hearings on the matter; we anticipate that trial courts will exercise sound discretion to streamline the inquiry, for instance, by placing the onus on the state to supply sufficient, reliable information.

In this case, the state's general, unsworn assertion that no testable evidence exists is inadequate to sustain a summary dismissal of the petition for DNA analysis. The trial court, however, did not in any way address this issue. The court summarily dismissed the petition on other grounds, to which we now turn.

As we previously framed it, the third issue is whether, as a matter of law, the "consensual sex defense" that the petitioner pursued at trial defeats the need for testing. The trial court opined that this theory of defense was fatal to the petition inasmuch as it defeated the statutory requirement that a "reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis." *See* Tenn. Code Ann. § 40-30-304(1) (2003). We disagree.[2]

Unlike statutory schemes in other jurisdictions, Tennessee's Post-Conviction DNA Analysis Act of 2001 does not explicitly require that the petitioner show that identity was an issue at trial. *See William D. Buford*, slip op. at 4; *Willie Tom Ensley*, slip op. at 2-3. Also, trial courts in Tennessee "may" order testing even if DNA analysis would have produced only a more favorable verdict or a more favorable sentence. Tenn. Code Ann. § 40-30-305(1) (2003); *see William D. Buford*, slip op. at 4; *Willie Tom Ensley*, slip op. at 2-3.

The recent decision in *Jack Jay Shuttle v. State*, No. E2003-00131-CCA-R3-PC (Tenn. Crim. App., Knoxville, Feb. 3, 2004), *applic. perm. app. filed* (Tenn. Apr. 2, 2004), supports the view that the theory of defense pursued at trial does not necessarily control the outcome of a petition for DNA testing. The petitioner in *Shuttle* had been convicted of first-degree murder, and after pursing post-conviction relief based on ineffective assistance of counsel, he filed a petition requesting that blood underneath the victim's fingernails and blood on his jeans be subjected to DNA analysis. *Jack Jay Shuttle*, slip op. at 1-2. The lower court denied the petition, but that ruling was reversed on appeal.

---

[2] This court's earlier opinion addressed the petitioner's bid for post-conviction relief based on a claim of ineffective assistance of counsel. The lower court had dismissed the post-conviction petition, and the dismissal was affirmed on appeal. One of the petitioner's complaints against trial counsel related to the absence of DNA testing. The petitioner claimed that counsel was ineffective for not obtaining DNA testing and that counsel failed to cross-examine the state's expert about the inconclusive results of forensic tests that were performed and how DNA testing would have included or excluded the petitioner as the source of the semen. *Steven Craig Griffin*, No. 01C01-9801-CC-00004, slip op. at 4. In rejecting the complaint, this court stated that DNA evidence was irrelevant to the consensual sex defense offered by the petitioner and that the proposed course of cross-examination would not advance the consent defense. *Id.*, slip op. at 4-5. We note that the petitioner's complaint about counsel's ineffectiveness did not impugn the theory of defense pursued at trial.

One of the issues in *Shuttle* was whether the petitioner's testimony at trial that he killed the victim defeated his bid for DNA testing in view of the requirement that he show a reasonable probability that he would not have been prosecuted or convicted had exculpatory DNA evidence been obtained. The *Shuttle* court did not find the trial testimony to be dispositive because the Act was created with wrongfully convicted or sentenced defendants in mind. *See id.*, slip op. at 6.

In the course of its ruling, the *Shuttle* court factually distinguished an earlier decision in *Carl E. Saine v. State*, No. W2002-03006-CCA-R3-PC (Tenn. Crim. App., Jackson, Dec. 15, 2003), *perm. app. denied* (Tenn. 2004). *Saine* involved a petitioner convicted of assault and rape who later petitioned to secure DNA testing of spermatozoa discovered on the victim's torn panties. The petitioner had confessed to assaulting the victim but claimed that the victim was unconscious when he left and that someone else could have entered the room and raped the victim without her knowledge. *Carl E. Saine*, slip op. at 3, 5. The court affirmed the denial of the petition for DNA analysis because, *inter alia*, the evidence that Saine wanted tested could not be directly linked to the rape. *See id.*, slip op. at 5-6.

Consequently, for the foregoing reasons, we do not view the theory of defense pursued at trial as automatically controlling the outcome of a petition for DNA testing, nor do we regard this court's earlier opinion addressing counsel's effectiveness as dispositive of the different issue now before us. The trial court, as a result, erred in *summarily* denying the request for DNA analysis as barred by the sexual consent defense at trial.

The last issue requires us to determine if the petitioner knowingly waived DNA testing in earlier proceedings. To address the issue, we have consulted the court record in the earlier post-conviction proceeding. *See Delbridge v. State*, 742 S.W.2d 266, 267 (Tenn. 1987) ("[C]ourts may take judicial notice of . . . court records in an earlier proceeding of the same case and the actions of the courts thereon.").

From the evidentiary hearing on the post-conviction petition, we glean that the petitioner was extradited from Florida to Tennessee in June 1993. The petitioner demanded trial within 180 days pursuant to the Interstate Compact on Detainers, *see* Tenn. Code Ann. § 40-31-101 *et seq.* (2003), and his trial commenced in September. While the case was underway, information came to light that certain jurors had acquired independent knowledge of the petitioner's prior convictions, prompting the trial court to declare a mistrial. The case was rescheduled and tried in October 1993, also within the 180-day window, at which time the petitioner was convicted. Because the petitioner had demanded trial within 180 days of extradition, DNA testing could not have been completed before either trial.

The theory of defense at the first trial was reasonable doubt. Trial counsel explained at the post-conviction hearing that a pivotal witness for the state was unavailable for the first trial. Without this witness, the state's ability to prove identity was thrown into doubt, thereby favoring a mistaken identity/reasonable doubt line of defense. After the mistrial, however, the state located the

witness, which prompted counsel at the second trial to shift to a defense theory that the victim had consented to the sexual encounter. The petitioner did not testify at the second trial.

At the post-conviction hearing, the petitioner acknowledged the shift in defense theories between the first and second trials, but he testified that the change in defenses "isn't an issue I presented in my post-conviction." He also testified that, in terms of the offenses, he told counsel he could not remember what had happened and was under the influence of alcohol. Likewise, counsel testified that the petitioner related that he remembered being in the area and drinking heavily, after which he had no memory of events later that night.

From the testimony presented, the post-conviction court concluded,

[T]here wasn't time for the DNA testing to be conducted . . . if the -- uh -- trial was to take place within the time frame that the defendant insisted upon. It was his right to insist upon that; but, it's kind of -- uh -- you can't have your cake and eat it, too, type situation. And, he opted for the quick trial in this situation.

In our opinion, the petitioner's earlier failure to pursue DNA analysis was a deliberate and knowing bypass of that avenue of investigation, which constitutes waiver in the context of this collateral action. In general, the client has exclusive authority to make decisions that are binding upon the attorney within the framework of the law. *See Zagorski v. State*, 983 S.W.2d 654, 658 (Tenn. 1998). In this case, the petitioner's desire for an early trial date was paramount, and he was willing to forego a legally available objective to secure a speedy trial. If, as in this case, a competent petitioner knowingly and voluntarily chooses a lawful course of action or defense strategy and if the petitioner is thereby prejudiced by his own decision, he should not later be heard to complain.

To be sure, the statutory sections of the Post-Conviction DNA Analysis Act of 2001 do not explicitly mention "waiver." Nonetheless, one of the express qualifying criteria that must be met to obtain DNA analysis is a showing that "[t]he application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice." Tenn. Code Ann. § 40-30-304(4) (2003). The concern expressed in that qualifying criteria mirrors one of the often cited considerations for waiver: that is, finality. *See House v. State*, 911 S.W.2d 705, 714 (Tenn. 1995). "[T]here must be a finality to all litigation, criminal as well as civil." *Arthur v. State*, 483 S.W.2d 95, 97 (Tenn. 1972).

The facts surrounding the petitioner's conviction demonstrate that the failure to pursue DNA testing at the pretrial stage of the prosecution was a calculated decision. That decision, moreover, was unrelated to the theory of defense. For the first trial, an identity/reasonable doubt defense was pursued; for the second trial, consent was the theory of defense. In neither scenario did the petitioner pursue available, scientific DNA analysis. His evident concern was a speedy trial; that strategy might have carried the day in the first trial had a mistrial not been required, considering the unavailability of a key witness for the state. That said, in our opinion it behooved the petitioner to

show in his application for DNA testing why his present request would "not unreasonably delay the execution of sentence or administration of justice." Tenn. Code Ann. § 40-30-304(4) (2003); *see Sedley Alley v. State*, No. W2004-01204-CCA-R3-PC (Tenn. Crim. App., Jackson, May 26, 2004) (noting that the post-conviction court expressed having "serious questions regarding the motivations of the petitioner for raising this issue at this time" in terms of statutory requirement that petition for DNA analysis must be brought for purpose of demonstrating innocence and not to unreasonably delay execution of sentence or administration of justice). That showing was not made, for which the trial court was authorized to dismiss the request for DNA analysis. *See William D. Buford*, slip op. at 7 (if apparent that any of the qualifying criteria cannot be established, trial court has authority to dismiss petition); *see also* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

In summary, we conclude that the trial court should not have treated the request for DNA analysis as a petition to reopen the earlier post-conviction proceeding. We further conclude that the state's response was inadequate to explain why it could not produce the requested evidence and, therefore, could not supply grounds to summarily dismiss the petitioner's request. Moreover, we conclude that the "consensual sex" theory of defense did not, *as a matter of law*, defeat the request for DNA analysis. Finally, however, we hold that the application was properly dismissed for failure to satisfy the statutory condition that "[t]he application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice." Tenn. Code Ann. § 40-30-304(4) (2003), and for that reason we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE