# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 12, 2003 Session

## JESSE CLEO MINOR b/n/f LEANN MORRISON v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Criminal Court for Davidson County**
**No. 97-C-2096     Cheryl Blackburn, Judge**

_____

**No. M2002-02378-CCA-R3-PC - Filed December 23, 2003**

_____

The petitioner, Jesse Cleo Minor, entered a best-interest plea to one count of attempted rape of a child.  He is currently serving an eight-year sentence.  See State v. Jesse Cleo Minor, No. M1998-00424-CCA-R3-CD, 1999 WL 1179143 (Tenn. Crim. App. at Nashville, Dec. 15, 1999).  The post-conviction petition at issue herein was filed by the petitioner's daughter Leann Morrison as next friend.  The petition alleges that the petitioner is in poor health and suffers from irreversible dementia that seriously affects his cognitive abilities.  The petitioner attacks his conviction based upon the following four allegations: (1) he was incompetent and unable to understand the prior proceedings and therefore incapable of entering a voluntary guilty plea; (2) the State failed to disclose material exculpatory evidence; (3) false and/or materially misleading statements were offered to the trial court; and (4) trial counsel was ineffective.  We affirm the trial court's dismissal of the post-conviction petition.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

Hal D. Hardin, Nashville, Tennessee; J. G. Mitchell, III, Murfreesboro, Tennessee; and Hugh C. Howser, Jr., Nashville, Tennessee, for the appellant, Jesse Cleo Minor.

Paul G. Summers, Attorney General & Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Victor S. Johnson, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

In 1997, the petitioner was charged with three counts of rape of a child, two counts of aggravated sexual battery, and one count of aggravated assault. See State v. Jesse Cleo Minor, 1999 WL 1179143, at *1. Pursuant to settlement with the State, the petitioner entered a best-interest plea on May 21, 1998 to one count of attempted rape of a child and received an eight-year, Range I sentence. The remaining charges were dismissed. During the plea hearing, the prosecutor stated that if the case had gone to trial, the State would have proven that in August of 1995, Stephanie Patton asked nine-year-old A.D. to go with her to the petitioner's business to do some painting. When they arrived, the petitioner and Patton took A.D. to another location where Patton held a knife to A.D.'s throat and ordered her to do what the petitioner wanted. The petitioner then had penile/vaginal contact with A.D. and digital penetration of A.D. A.D. was subsequently forced to perform oral sex on the petitioner while they watched a pornographic movie. The petitioner agreed that these were the facts that the State would attempt to prove at trial.

At the sentencing hearing, the trial court imposed incarceration as the manner of service of the sentence. Id. On direct appeal, we affirmed the conviction, but modified the sentence to eliminate the requirement of community supervision for life. Id. at *4.

After the guilty plea and sentencing, the mother of the minor victim filed a civil lawsuit in the Davidson County Circuit Court against the petitioner, his wife, and Stephanie Patton, who was the petitioner's co-defendant. The lawsuit alleged sexual assault of the victim and sought the award of money damages. See Alana Dowell v. Jesse C. Minor, No. M2000-00378-COA-R9-CV, 2000 WL 489740, at *1 (Tenn. Ct. App. Apr. 26, 2000) (no Tenn. R. App. P. 11 application filed).

On February 2, 2000, the petitioner, by and through his "next friend," Leann Morrison, filed a petition for post-conviction relief. The post-conviction court dismissed this petition as prematurely filed because this Court had not yet issued its mandate from the direct appeal. Apparently, the appellant did not appeal the dismissal.

On April 20, 2000, the petitioner, through Ms. Morrison as "next friend," again filed a petition for post-conviction relief. The State moved to dismiss the petition, arguing that the petition was improperly filed through a "next friend," that the petitioner was at that time incompetent to maintain the action, and that the statute of limitations would be tolled during the petitioner's incompetency. Although a written order of that dismissal does not appear in the record, the court minutes reflect that the State's motion to dismiss was granted on June 30, 2000. Other information in the record indicates that the basis for that dismissal was the petitioner's "next friend" status, which the trial court ruled was not a permissible manner in which to bring a post-conviction action. As with the previous filing, it appears that the petitioner did not appeal the dismissal.

On July 13, 2000, the petitioner filed a third petition for post-conviction relief styled "Jesse C. Minor, individually, and by and through counsel Hal D. Hardin v. State of Tennessee." The evidentiary hearing on the merits of the petition was scheduled for October 11, 2000. However, at the outset of the hearing, the trial court expressed reservations regarding a potential conflict of interest in that the petitioner's post-conviction attorneys also represented the petitioner and his family members in defense of the civil suit. In order to address these concerns, the trial court appointed an attorney ad litem and ordered an independent mental evaluation of the petitioner to determine if he was competent enough to chose his own legal counsel for the post-conviction proceedings.

On October 21, 2000, the petitioner filed a motion to reconsider the orders appointing the attorney ad litem and requiring the mental evaluation. The caption of this pleading styled the case "Jesse C. Minor, b/n/f/ Leann Morrison and by and through counsel, Hal D. Hardin v. State of Tennessee." This was the first attempt to inject Ms. Morrison as "next friend" into the third petition for post-conviction relief. From this point forward, the petitioner's filings have utilized the caption adopted in this motion. A memorandum accompanying that motion complained of the trial court's "previous ruling" that Ms. Morrison could not proceed as "next friend." The motion referenced the June 30, 2000 order, which dismissed the second petition for post-conviction relief. As we have noted, the dismissal was not appealed and apparently became a final order. Following a hearing, the court denied this motion to reconsider by written order on December 4, 2000.

The petitioner filed a motion in the lower court for certification of an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9 in which the petitioner sought review of the trial court's rulings prohibiting Ms. Morrison from proceeding as the petitioner's "next friend," appointing the attorney ad litem, and ordering the mental evaluation.

The petitioner then filed a motion for recusal of the trial judge raising three bases for recusal: (1) the appearance of partiality due to the trial judge's former employment in the district attorney's office; (2) the appearance of bias because the trial judge met with one of the petitioner's potential witnesses in chambers without the parties or counsel being present; and (3) the trial judge conducted an investigation into the court records of the collateral civil proceedings.

The trial court denied both the petition for interlocutory appeal and the motion for recusal. As a result, the petitioner filed an application for extraordinary appeal with this court. See Tenn. R. App. P. 10. We granted the application to review three issues: (1) Whether a "next friend" may file a petition for post-conviction relief on behalf of an incompetent prisoner; (2) if so, may a trial court, sua sponte, order a mental evaluation of the prisoner or conduct other inquiries into the matter to determine whether the "next friend" petition was properly filed on the prisoner's behalf; and (3) Whether the trial judge in this case properly denied the petitioner's motion to recuse. Jesse C. Minor v. State, No. M2001-00545-CCA-R10-PC, 2001 WL 1545498, at **1-4 (Tenn. Crim. App. at Nashville, Dec. 5, 2001).

Upon review of the issues presented in the Rule 10 application, this Court determined: (1) that it "improvidently granted review" of the issues of whether a "next friend" may filed a post-conviction petition on behalf of an incompetent prisoner and whether a post-conviction court may sua sponte order a mental evaluation of the prisoner to determine whether the "next friend" petition was properly filed because the issues were "not justiciable," see Minor v. State, 2001 WL 1545498, at **4-5; (2) that the trial court did not err in ordering a mental evaluation, appointing an attorney ad litem, or inquiring into competency and conflicting interests; and (3) the trial court properly denied the motion for recusal. As a result of our decision, this Court remanded the case for a determination on the merits of the post-conviction petition.

The petitioner did not appeal the decision of this Court on the issues presented in the Rule 10 application pursuant to Tennessee Rule of Appellate Procedure 11. The post-conviction trial court subsequently ordered that the petition be set for a status hearing.

On February 1, 2002, a motion was filed to set the petition for post-conviction relief for an evidentiary hearing so that the trial court could rule on the merits of the petition. A second motion was filed simultaneously requesting that Ms. Morrison be substituted as "next friend" in the matter.

Prior to the evidentiary hearing on the petition, the trial court held a hearing to determine whether the petitioner was mentally competent to choose and assist his own legal counsel in the case. As a result of the testimony at this hearing, the trial court ruled that the petitioner was competent for the purpose of choosing and assisting his legal counsel in the preparation of the post-conviction petition.

### Post-Conviction Hearing

An evidentiary hearing was held on the post-conviction petition on May 28, 2002. The trial court dismissed the petition after hearing testimony from various individuals including trial counsel, several medical personnel, the petitioner's daughter, and a criminal law expert who rendered an opinion as to the ineffective assistance of counsel claim.

The evidence at the hearing consisted of the following. Trial counsel testified that during the course of his initial preparation, he obtained the petitioner's medical history and discovered that the petitioner was diagnosed as impotent four years prior to the offense. As a result, trial counsel interviewed the petitioner's urologist, the petitioner, and the petitioner's family. Trial counsel also hired an investigator to look at the backgrounds of any potential State witnesses.

When some of the family members expressed their concern about the petitioner's mental health, trial counsel immediately began to investigate their claims. He initially contacted Dr. David MacMillan, a psychologist, who referred him to Dr. Ed Qualls, a forensic neuropsychologist. Trial counsel asked Dr. Qualls to evaluate the petitioner by being "completely impartial." He informed Dr. Qualls that he did not want to bring him to court as a "hired gun." He had several telephone conversations with Dr. Qualls and specified that he asked the doctor for a determination regarding

-4-

the petitioner's diminished capacity, competency, and insanity. Trial counsel understood Dr. Qualls's opinion to be that the petitioner "lacked the capacity to be able to form criminal intent for this particular act," but that "Dr. Qualls said that he felt that . . . [the petitioner] did at least have . . . periods that he would be very, very aware of what was happening, on a particular day, . . . and . . . he may go into some periods where he was not certainly aware of everything that was occurring in his life. . . ." Dr. Qualls told trial counsel to ask the petitioner questions to see if he was oriented with respect to time, place, and occurrence in order to ascertain the petitioner's state of mind at any given time.

Trial counsel used the test suggested by Dr. Qualls and felt that there were "several occasions" where the petitioner was very aware of what was going on, but that on other occasions, he felt that the petitioner was not very aware of what was going on around him. Despite the petitioner's behavior, trial counsel felt that the petitioner was able to assist him in the preparation of the defense because he was able to give specific details, thoughts, and ideas. The petitioner was able to relay the facts surrounding the allegations to his attorney "on at least three or four occasions." When it came time to decide whether to go to trial or to plead, the petitioner was able to tell his attorney specifically what he wanted and why. Counsel testified that there was no doubt in his mind that the petitioner had an understanding of the legal procedures and the possible penalties he faced if convicted of all the charges. At the time of the plea, the petitioner was scheduled to have open heart surgery in the near future. Counsel discussed the possibility of a continuance with the district attorney's office, but got the impression that the plea would be withdrawn if he made such a request. The petitioner did not want the offer withdrawn.

Counsel testified that he discussed the possibility of a competency hearing with the petitioner. The petitioner stated that he felt "pulled" because some family members wanted him to go forward with a trial, while others felt it would be better if he accepted a plea offer. The petitioner relayed to his attorney that he believed a jury would "crucify" him because he was "an old, white man" and the victim was a "sweet, young, black girl." After discussing the strengths and weaknesses of the case with the petitioner and his family, the petitioner expressed his desire to go forward with the plea.

Counsel stated that he never gave any serious consideration to a competency hearing because both Dr. Qualls and Dr. MacMillan stated that the petitioner was competent and that he realized the consequences of what was occurring in court. He also felt that the court would find the petitioner competent. Counsel also had Dr. James Powers, a geriatric specialist at Vanderbilt, review all of the petitioner's medical records. Dr. Powers concluded that the petitioner was competent. Counsel testified during cross-examination that nothing occurred during the guilty plea hearing to lead him to believe that the petitioner did not understand what was happening.

Dr. Qualls testified that he was contacted by Dr. MacMillan to perform an evaluation of the petitioner in the role of a neuropsychologist. In response to that request, he prepared a battery of tests, reviewed the petitioner's medical records and performed an evaluation. In his opinion the petitioner "suffered from vascular dementia also known at that time before the change in nomenclature as multi-infarct dementia" and that "he did not present with the mental capacity to

-5-

have planned and executed the crimes as presented in the charges against him." However, Dr. Qualls did not ascertain whether the petitioner was competent to enter a guilty plea or stand trial because he "was not asked to [by trial counsel]." Dr. Qualls was angered because he felt that trial counsel's testimony was inconsistent with what actually occurred. Specifically, Dr. Qualls stated that he never had any discussions with trial counsel regarding the petitioner's competency to stand trial.

Overall, Dr. Qualls felt that the petitioner's cognitive capacity declined over the years, but that the petitioner exhibited some improvement in the psychotic features that he exhibited earlier. Dr. Qualls felt that on petitioner's "best day" he could understand a portion of the very complex issue of the legal process, but that his understanding fluctuated.

Dr. Qualls actually performed a competency evaluation of the petitioner on September 9, 1999, after the guilty plea and sentencing hearing, but prior to the post-conviction hearing, and found that the petitioner's ability to help his attorney and assist in his defense was severely compromised and highly inconsistent. The petitioner understood in "broad terms" the consequences of the charges against him, but did not understand the nuances of the legal proceedings. Dr. Qualls admitted on cross-examination that he felt the petitioner was incompetent to stand trial when he first examined the petitioner, but he did not relay this information to trial counsel because he was not asked for his opinion on competency to stand trial.

The petitioner also offered the testimony of Neil Cohen, a professor of law and preventive medicine, on the issue of ineffective assistance of counsel. Professor Cohen reviewed the guilty plea and the transcript of the sentencing hearing and concluded that there was "little doubt" in his mind "that he [the petitioner] did receive ineffective assistance of counsel." He felt that there was "no doubt that competence to stand trial was a real issue that had to be addressed" and that it was "remarkable" that it was not. Professor Cohen felt so strongly about the issue of the petitioner's competency to stand trial that he stated, "indeed, if I were tomorrow to teach a classic illustration of when there should be an evaluation for competence, this would be the case."

Dr. Deborah Bryant, a general pediatrician with experience in forensic pediatrics, testified that she examined the victim in November of 1995. She testified that in the parent/caretaker interview that the victim's mother stated that she had not questioned the victim and knows of no other contact other than the penile/vaginal penetration. Dr. Bryant testified that the victim's hymen was intact at the time of the examination.

The assistant district attorney who prosecuted the case up until the date of the plea also testified. He indicated that he provided trial counsel with all materials pursuant to "Rule 16" and that if he had known that the victim had engaged in "sex for hire" prior to the sentencing hearing that he probably would have revealed it to the petitioner.

Leeann Morrison, the petitioner's daughter, testified that at the time of the plea she was aware of the petitioner's mental and physical problems. She thought that the petitioner did not want to plead guilty, but believed that a jury would assume that he committed the offense. Ms. Morrison

also testified that the petitioner told her that he could not take the stand in his own defense. She was concerned about the petitioner's mental state at the time of the sentencing hearing because she felt he could not understand what was taking place.

The post-conviction petition seeks review of the following issues: (1) whether the petitioner was denied effective assistance of counsel because counsel failed to request a competency hearing and failed to properly investigate and present defenses in an adequate manner; (2) whether the appellant was competent to understand the proceedings and waive his right to a trial by entering a "best interest" plea; and (3) whether the State failed to disclose or permit access to exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).

## Post-Conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim . App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law

and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In the case herein, the petitioner argues that he was denied effective assistance from counsel because counsel failed to request a competency hearing and failed to properly investigate and present available defenses in an adequate manner.

### A.  Failure to Request a Competency Hearing

In regards to the competency issue, the petitioner specifically argues that counsel was on notice from the outset of the representation that the petitioner had potential mental health problems, yet counsel employed medical personnel to evaluate the petitioner's competency only at the time of the commission of the offense rather than his competency to stand trial and also failed to request a competency hearing. Petitioner argues that the trial counsel's failure to request a competency hearing was a violation of due process. The State argues that "trial counsel should not be faulted for failing to request a mental competency hearing when none of the experts that reviewed the petitioner's medical history and files informed him that the petitioner was not competent to stand trial."

After listening to the testimony at the post-conviction hearing, the trial court determined:

[T]he case at bar is not a case in which counsel failed to conduct any investigation of the Petitioner's potential for mental incompetence.  Rather, even though Petitioner's counsel did not request a competency hearing, counsel did present the testimony of Dr. Qualls at the sentencing hearing regarding the issue of the Petitioner's mental competence . . . .  Dr. Qualls proffered no testimony that would suggest that the Petitioner was unable to effectively assist his legal counsel in presenting and preparing his own defense.

. . . [Dr. Qualls] deliberately failed to go beyond the limited purpose for which he was hired to evaluate the Petitioner.  Because trial counsel reasonably relied upon Dr. Qualls's evaluation as to the Petitioner's mental competence and because that reliance on the opinion of a neuropsychiatric expert is not unreasonable, this Court finds that the assistance rendered by trial counsel cannot be deemed inadequate where the assistance of the mental health expert was intentionally deficient.

Further, the trial court found the testimony of trial counsel "credible" and felt that trial counsel's testimony "reflect[ed] the petitioner's rational decision-making and ability to choose between alternative selections."

It is well-established that subjecting a mentally incompetent defendant to trial violates his right to due process of law. Drope v. Missouri, 420 U.S. 162, 171 (1975). The test applicable under the federal constitution in evaluating a defendant's mental competency to stand trial was set forth by the United States Supreme Court in Dusky v. United States, 362 U.S. 402, 402 (1960), as:

> [W]hether he [the defendant] has sufficient present ability to consult with his lawyer
> with a reasonable degree of rational understanding - - and whether he has a rational
> as well as factual understanding of the proceedings against him.

In other words, a defendant must possess the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. Drope, 420 U.S. at 171. Tennessee courts have adopted this standard. See State v. Black, 815 S.W.2d 166, 173-74 (Tenn. 1991); State v. Leming, 3 S.W.3d 7, 8-9 (Tenn. Crim. App. 1998).

Because a defendant has exclusive authority to make the ultimate decisions about his case once having been fully informed of the rights and the potential consequences involved, the competence of a criminal defendant is critically important. Zagorski v. State, 983 S.W.2d 654, 658-61 (Tenn. 1998) (affirming a competent defendant's right to decline to present mitigating evidence during the sentencing phase of his capital trial). Consistent with this rationale, the American Bar Association's Standards for Criminal Justice provide that defense counsel should move for evaluation of a defendant's competence to stand trial whenever he has a good faith doubt as to the defendant's competence, even if the client objects to such a motion being made. ABA Standards for Criminal Justice § 7-4.2(c).

Thus, in evaluating the petitioner's claim of ineffective assistance of counsel herein, we must determine whether petitioner's counsel had reasonable cause to raise the issue of competency to stand trial. We initially note that this is not a case in which counsel failed to conduct any investigation of the petitioner's history of mental illness. Rather, counsel reviewed records pertaining to the petitioner's medical past and consulted with at least one of the petitioner's doctors, a urologist, as a result of that review. Furthermore, trial counsel employed a neuropsychologist to perform an evaluation on the petitioner to ascertain his competence at the time of the offense. The records reviewed by counsel and the opinions of Dr. Qualls gave trial counsel the opinion that there was "no doubt that . . . [the petitioner] had a full appreciation for the consequences of the criminal case." Counsel testified that he gave "no serious consideration" to a competency hearing because the petitioner was able to relay the facts of the situation, understood his legal options, was able to make an informed decision to enter into the guilty plea, and both Dr. Qualls and Dr. MacMillan told him that the petitioner was competent and realized the consequences of what was occurring in court. The trial court found that counsel's "testimony on this issue is credible and reflects the petitioner's rational decision-making ability to choose between alternative selections."

-9-

"[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odum, 928 S.W.2d 18, 23 (Tenn. 1996). Furthermore, this Court affords the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. After a de novo review, we conclude that the evidence in the record does not preponderate against the trial court's decision that trial counsel was effective despite the failure to request a competency hearing.

### B. Failure to Properly Investigate and Present an Adequate Defense

The petitioner also complains that trial counsel failed to properly investigate and present available defenses in an adequate manner. Specifically, the petitioner claims that trial counsel failed to question potential witnesses, failed to obtain relevant information in a timely fashion, and failed to compare the existing medical records with the testimony of the witnesses. The State counters that the record does not preponderate against the trial court's decision that trial counsel was not ineffective.

After hearing the testimony at the hearing on the post-conviction petition, the trial court found that trial counsel's testimony was credible regarding his investigation and strategic decisions associated with the case. As a result, the trial court found counsel's pre-trial performance was not deficient.

The evidence showed that trial counsel hired a private investigator to compile information regarding the victim, the victim's family, and other potential witnesses. Trial counsel obtained the victim's medical records, learned as much as he could about the co-defendant, and evaluated the "glaring inconsistencies" in her statements regarding the case. He consulted two physicians regarding the petitioner's impotence, interviewed the petitioner's own urologist, and hired Dr. Qualls to perform a competency evaluation. Trial counsel relayed to the petitioner that he felt they had a "persuasive" case based on the inconsistencies in the co-defendant's story, the victim's medical history, and the petitioner's lack of capacity to form criminal intent. After discussing the options with the petitioner, the petitioner himself made the decision to plead guilty rather than face a trial.

Petitioner herein did not establish both prongs of the test in order to prevail on a claim of ineffective assistance of counsel. Henley, 960 S.W.2d at 580. In fact, he failed to satisfy even the first prong by showing that counsel's performance was deficient. Failure to prove either prong provides a sufficient basis to deny relief. Id. The trial court afforded great credibility to the testimony of trial counsel. As stated previously, we give that determination great deference on appeal. See Odum, 928 S.W.2d at 23. We also afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. After a de novo review, we conclude that the evidence in the record does not preponderate against the trial court's decision that trial counsel was effective in his investigation of the case.

<u>Voluntary and Knowing Guilty Plea</u>

The second issue raised by the petitioner in this post-conviction appeal questions the knowing and voluntary nature of his "best interest" plea. The petitioner maintains that the State offered no proof of his competency at the post-conviction hearing and that the trial court failed to order a competency hearing when it was put on notice that there were issues regarding the petitioner's competency. The State argues that the evidence does not preponderate against the trial court's finding that the plea was knowingly and voluntarily entered and, therefore, the issue is without merit.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." <u>North Carolina v. Alford</u>, 400 U.S. 25, 30 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. <u>See</u> <u>State v. Turner</u>, 191 S.W.2d 346, 353 (Tenn. Crim. App. 1995); <u>see also</u> <u>Chamberlain v. State</u>, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. <u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993).

Looking at the totality of the circumstances, while trial counsel did not request a competency hearing, counsel did present the testimony of Dr. Qualls at the sentencing hearing regarding the issue of petitioner's competence. Dr. Qualls's testimony at the sentencing hearing was consistent with the testimony he offered at the evidentiary hearing on the post-conviction petition. In his opinion, the petitioner was not mentally competent to "formulate the intent, plan and execute the acts described in the criminal charges against him." Aside from this conclusion, Dr. Qualls made no comments that would indicate that the petitioner was unable to effectively assist his counsel in preparing for trial, standing trial, or entering a plea. Trial counsel relied on Dr. Qualls's assessment of the petitioner in making the determination as to whether or not to request a competency hearing.

At the hearing on the "best interest" guilty plea, petitioner was able to articulate and appropriately respond to questions asked of him by the trial court. In denying the post-conviction relief based on the voluntariness of the guilty plea, the trial court noted that there was no "behavior on behalf of the petitioner that would alert the court that the petitioner was mentally incompetent" and that "petitioner's responses to the questions posed him by the court at the guilty plea proceeding were appropriate and germane to the subject matter at hand." The trial court went on to point out that the petitioner did not respond with the "stock" answers of "yes" and "no," but that the petitioner used such phrases as "that's correct," "no, I don't," "I would," and "that's right." At the sentencing hearing after the guilty plea when Dr. Qualls indicated that the petitioner might not be competent, the trial court interrupted the proceedings to extensively question the petitioner about his

understanding of the nature of the criminal charges, his understanding of the guilty plea, his ability to appreciate the consequences of the proceedings against him, and his ability to assist his legal counsel in furtherance of his own defense. The trial court, satisfied with the petitioner's responses, proceeded with sentencing.

Ultimately, the trial court found that while "not sophisticated in his understanding, the petitioner was able to chose between alternatives and able to understand the consequences of the legal proceeding," that the petitioner failed to establish that he was incompetent to stand trial at the time he entered his plea, and that the various witnesses at the sentencing hearing and evidentiary hearing established that the petitioner was able to consult with his trial counsel, understand the proceedings, and assist in the preparation of his defense.

In the instant case, the trial court questioned the petitioner extensively in order to satisfy the requirements of <u>Blankenship</u>. The trial court also accredited trial counsel's testimony that the petitioner was competent during his plea hearing, thus finding his guilty plea was entered knowingly and voluntarily. The evidence in the record does not preponderate against the trial court's findings in this case. Therefore, we conclude that, under the totality of the circumstances, the record fully supports the trial court's determination that the petitioner entered a knowing, intelligent and voluntary guilty plea. This issue has no merit.

Failure to Disclose Exculpatory Evidence

Finally, the petitioner argues on appeal that the State failed to disclose information and permitted false testimony to be introduced at the sentencing hearing in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Specifically, he argues that the trial court was under the impression that the victim's hospitalization rendered her unable to appear in court when the State knew that the victim was hospitalized at the time of sentencing for reasons not related to the offense. Further, he argues that the State knew that the victim "had been caught performing oral sex for money on some fifteen young men" approximately one year after the incident, yet did not disclose the information to the petitioner. The State argues that the victim's mother indicated in her deposition that the victim was receiving treatment as a result of the offense and that "the petitioner has not shown that the result of the sentencing hearing would have been different had trial counsel been aware of the information relative to the alleged promiscuous sexual behavior of the victim."

We observe at the outset that the petitioner waived these matters by failing to raise them on direct appeal. <u>See</u> Tenn. Code Ann. § 40-30-206(g); <u>Minor</u>, 1999 WL 1179143, at *1. We therefore conclude that he has waived these contentions. <u>See</u> <u>State v. John L. Goodwin, III</u>, No. M2001-00044-CCA-R3-PC, 2002 WL 1827504, at *7 (Tenn. Crim. App. at Nashville, Aug. 2, 2002). However, we observe that even if the petitioner had not waived these concerns, he failed to provide the requisite clear and convincing evidence supporting them. <u>See</u> Tenn. Code Ann. § 40-30-210(f).

In <u>Brady v. Maryland</u>, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

-12-

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87; see also Hartman v. State, 896 S.W.2d 94, 101 (Tenn. 1995). In order to establish a due process violation under Brady, four prerequisites must be met:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the state is bound to release the information, whether requested or not);
2. The state must have suppressed the information;
3. The information must have been favorable to the accused; and
4. The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence. Id. When determining the materiality of undisclosed information, a reviewing court must establish whether "in [the] absence [of the information, the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995). In other words, evidence is considered material only if there is a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different. Edgin, 902 S.W.2d at 390-91.

Here, the petitioner complains that the State failed to turn over information regarding the nature of the victim's hospitalization at the time of the sentencing hearing and information regarding the promiscuous behavior of the victim that occurred about a year after the incident with the petitioner. The petitioner argues that the behavior of the victim goes to the credibility of the victim. The petitioner also claims that the State allowed false testimony by the victim's mother at the sentencing hearing regarding the victim's hospitalization. The petitioner bases his argument on the deposition of the victim's mother which was taken during the related civil case in May of 1999, approximately a year after the guilty plea.

The evidence in the record reveals that in the deposition, the mother asserted that she told the district attorney about the sexual incident and hospitalization. The petitioner therefore claims that the information was made known to the State prior to the sentencing hearing by the victim's mother, but that neither the District Attorney nor the detective disclosed this information to the court or the petitioner.

Regarding the hospitalization, the excerpt from the deposition of the victim's mother indicates that the victim was receiving treatment for an incident involving her stepfather as well as the "rape." The State claimed no knowledge of the sexual promiscuity of the victim. In fact, the assistant district attorney who prosecuted the case up until the date of the guilty plea testified at the post-conviction hearing that he provided trial counsel with all material that was available to him pursuant to Brady. He also testified that had he known that the victim had engaged in "sex for hire" prior to sentencing that he probably would have revealed that information to the defense.

-13-

The trial court found that "the reasons about why the victim may or may not have been present at the sentencing hearing, which occurred after the entry of the guilty plea, are not relevant to issues of post-conviction relief." Further, in regards to the alleged promiscuous behavior of the victim, the trial court found that "the petitioner has failed to prove by a preponderance of the evidence that the withheld information, while favorable, was material in nature;" that the petitioner "has failed to prove the reasonable probability that the result of the sentencing hearing would have been different had his trial counsel been aware of the information;" that the information was not "directly exculpatory in nature;" and that the evidence would not have been persuasive at the sentencing hearing. The trial court also held that the evidence of the victim's alleged behavior was not admissible as impeachment evidence under Tennessee Rule of Evidence 412(c) because it was not evidence of a pattern of behavior and the evidence was unfairly prejudicial to the victim.

After a de novo review, we conclude that the record does not preponderate against the findings of the trial court. The petitioner failed to show that the allegedly withheld evidence was material because he did not show: (1) that the State suppressed the information; (2) that the information was obviously exculpatory; (3) that the information was favorable to the petitioner; or (4) that the information was material in that there was a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different. Consequently, this issue is without merit.

Conclusion

For the foregoing reasons, we conclude that none of the petitioner's claims merit relief. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

-14-